IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

02 SEP 19 PM 3: 3

U.S. DISTRICT COURT
N.D. OF ALABAMA

CHARLES H. JOHNSON and          )
ALTON DALE GLASS,               )
                                )
                    Plaintiffs  )
                                )      CASE NO. CV98-HGD-2994-S
            vs.                 )
                                )
CITY OF CALERA, ALABAMA,        )
                                )      **ENTERED**
                    Defendant   )
                                       SEP 1 9 2002

## MEMORANDUM OPINION

The above-entitled civil action is before the court on the motion for summary judgment filed by defendant, City of Calera, Alabama [Doc. #73]. The parties have consented to the exercise of jurisdiction by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b), LR 72.1, and Rule 73, Fed.R.Civ.P.

Both plaintiff Charles H. Johnson and plaintiff Alton Dale Glass allege that they were subjected to age discrimination by defendant in a manner prohibited by the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621, *et seq.* In addition, Johnson also alleges discrimination based upon race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, as amended by the Civil Rights Act of 1991, and 42 U.S.C. § 1983. Glass also alleges that defendant retaliated against him for filing a charge of discrimination

with the Equal Opportunity Employment Commission (EEOC) and for filing this action.

This matter is considered by the court pursuant to the provisions of Rule 56, Fed.R.Civ.P.  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). Thus, summary judgment is appropriate where the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).   The substantive law governing the action determines whether an element is essential. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *see Brown v. Crawford*, 906 F.2d

2

667, 669 (11th Cir. 1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

This circuit clearly holds that summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in the light most favorable to the non-moving party, *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983); *see also, Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. *Id*. at 255, 106 S.Ct. at 2514, *citing Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970). It is, therefore, under this standard that the court must determine whether the plaintiffs can meet their burden of coming forward with sufficient evidence as to each material element of their claims sufficient to permit a reasonable jury to find in their favor.

3

## FACTUAL BACKGROUND

Charles H. Johnson

Plaintiff Charles H. Johnson was employed as a police officer by the defendant, beginning in September 1974 and continuing until his retirement in January 2000, after a stroke. [Johnson Depo. at 49, 101-02]. At the time of his hiring, Cecil Harris was the Chief of Police for the City of Calera.

In 1978, Johnson attended and completed training at the police academy located at the University of Alabama in Tuscaloosa. [Id. at 34-35, 70]. He also attended various continuing education law enforcement seminars conducted at the University of Alabama. [Id. at 34-35]. Johnson worked as a patrol officer from 1974 until 1984, when he was promoted to Sergeant. [Id. at 62-64].

Chief Harris retired in December 1991. [Id. at 75; Roy Depo. at 58-59]. James Glasgow became Chief upon the retirement of Harris. [Johnson Depo. at 75]. In 1992, Glasgow eliminated the position of sergeant and demoted Johnson and Calera's one other sergeant, C. P. Martin, to patrolmen. [Id. at 80-81, 85-86; Glasgow Depo. at 35-36]. He also hired Jim Finn as head of investigations and promoted him to lieutenant the following year. [Glasgow Depo. at 37]. Finn became Chief in May 1998.

4

Alton Dale Glass

Plaintiff Alton Dale Glass was employed by defendant in the position of patrolman from November 1984 until he resigned in September 2000.[1] [Glass Depo. at 41]. Prior to his employment with the City of Calera, Glass was employed as a police officer in Jemison, Alabama, in 1973 and in Thorsby, Alabama, in 1974. [*Id*. at 39-40, 102-105]. While employed by Thorsby, Glass was promoted to the position of Chief of Police. [*Id*. at 40]. Glass then worked as a police officer for the City of Columbiana for a year and a half beginning in 1974 and thereafter was employed with the Shelby County Sheriff's Department for two years. [*Id*. at 40-41, 107-110, 116-120].

Glass attended and completed training at the police academy at the University of Alabama in 1974. [*Id*. at 12, 90-91]. He also completed various other law enforcement-related courses and took various educational courses, including courses taken in pursuit of an associate's degree through Troy State University in 1974 or 1975, and in pursuit of a bachelor of science degree while employed at the University of Montevallo Traffic Safety Center between 1977 and 1982 or 1983. [*Id*. at 12, 93-94, 96-99]. Glass was a certified traffic safety instructor at the University of Montevallo. [*Id*. at 98].

Glass completed an evidence technician course at Jefferson State Community College in 1988 or 1989 and took various law enforcement-related

---

[1] Whether this resignation was also a constructive discharge is discussed *infra*.

5

seminars offered at the University of Alabama throughout his career.  [*Id.* at 14-15, 92].  He also completed a bio-terrorism course at Fort McClellan.  [*Id.* at 100].

## 1997 Police Department Reorganization

In August 1997, Chief Glasgow again reorganized the Calera Police Department.  On this occasion, he re-created the position of sergeant and commissioned three new sergeants:  Tommy Parker, Rick Rollan, and Chuck Holcomb.   Defendant concedes that none of these individuals had held a supervisory position with the Department in the past.  [Glasgow Depo. at 48, 55].  Neither Glass nor Johnson applied for or were offered one of the sergeant positions.

At the time that Parker, Rollan, and Holcomb were appointed sergeant, Glass was 46 years old and Johnson was 58 years old.  [Glass Depo. at 10; Johnson Depo. at 7].  All the newly-appointed sergeants were in their late twenties or thirties.  [Glasgow Depo. at 57-58].  Johnson is African-American; Glass, Parker, Rollan, and Holcomb are Caucasian.

### DISCUSSION

I.    Discrimination Claims

Johnson alleges that he was not promoted to the position of sergeant on the basis of his race, in violation of Title VII and § 1983, and his age, in

6

violation of 29 U.S.C. § 623. Glass alleges, *inter alia*, that he was not promoted to sergeant based on his age. These statutes have the same requirements of proof and use the same analytical framework; therefore, the court shall explicitly address the Title VII claim with the understanding that the analysis applies to the § 1983 and ADEA claims as well. *See Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985) (where plaintiff claims disparate treatment under both Title VII and §1983, courts may analyze claims together); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354,1358 (11th Cir. 1999) (in proving age discrimination claim, plaintiff can establish *prima facie* case through either direct evidence or variation of four-part test outlined in *McDonnell Douglas*[2] for circumstantial evidence). *See Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989).

In order to establish a case under Title VII, a plaintiff may use three different kinds of evidence of discriminatory intent:   direct evidence, circumstantial evidence or statistical evidence. The analytical framework and burden of production vary depending on the method of proof chosen. If a plaintiff can provide direct evidence of discriminatory intent, then the employer must prove by a preponderance of the evidence that the same employment decision would have been made in the absence of the discriminatory intent. *Wall v. Trust Co. of Georgia*, 946 F.2d 805, 809 (11th Cir. 1991); *Standard v.*

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

*A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Strong statistical evidence combined with anecdotal evidence can be used to establish a *prima facie* case of discrimination. *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1287 (11th Cir. 2000); *see also Int'l B'hood of Teamsters v. United States*, 431 U.S. 324, 336-40, 97 S.Ct. 1843, 1855-57, 52 L.Ed.2d 396 (1977). The evidence submitted by plaintiffs does not reflect any direct or statistical evidence of discrimination regarding any of their claims.

The standard of analysis of circumstantial evidence for claims of disparate treatment is set out by the United States Supreme Court in *McDonnell Douglas*. The Court held that a plaintiff who has alleged racial discrimination in hiring has the burden of producing evidence (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants. 411 U.S. at 802, 93 S.Ct. at 1824.

*McDonnell Douglas* was a hiring case, but courts have used variants of the four factors in the context of other types of discrimination claims. *See, e.g. Barber v. Int'l B'hood of Boilermakers*, 778 F.2d 750, 756 (11th Cir. 1985) (wage discrimination); *Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997) (failure to promote); *Jones v. Gerwens*, 874 F.2d 1534 (11th Cir. 1989) (discriminatory disciplinary action); *Damon, supra* (age discrimination).

8

To establish his *prima facie* case of discriminatory failure to promote, Johnson must show that (1) he was in a protected group; (2) he was not given the promotion; (3) he was qualified for the position; and (4) someone outside of the protected group was given the position. *A.B.E.L. Services*, 161 F.3d at 1333. This circuit has adopted a variation of the test articulated by the Supreme Court for Title VII claims in *McDonnell Douglas* for cases arising under the Age Discrimination in Employment Act (ADEA). In order to make out a *prima facie* case of an ADEA violation, the plaintiff must show that he (1) was a member of the protected age group, (2) was subject to adverse employment action, (3) was qualified to do the job, and (4) was replaced by a younger individual. *Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 566 (11th Cir. 1992).

Once a *prima facie* case of discrimination has been established, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Texas Dep't of Community Affairs v. Barton*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). If a defendant carries its burden of articulating legitimate, non-discriminatory reasons for its decision, the plaintiff is accorded the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision, "either directly by persuading the court that a discriminatory reason more likely motivated the

9

employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Barton*, 450 U.S. at 256, 101 S.Ct. at 1095. The plaintiff at all times retains the ultimate burden of persuading the trier of fact that the employer discriminated against the plaintiff. *Id.* at 253, 101 S.Ct at 1093. The only difference in the establishment of a *prima facie* case of discrimination under the ADEA and 42 U.S.C. § 1983 is that the discrimination under the ADEA is based on age rather than race.

There is no question that both plaintiffs are members of the protected group under the ADEA because both are over 40 years of age. 29 U.S.C. § 631(a). Likewise, the persons selected for the positions at issue were younger than plaintiffs and in their twenties and thirties.

With regard to the race discrimination claim asserted in the complaint by Johnson, it is conceded that he is African-American; whereas, Glass and the three officers selected for the three sergeant positions are Caucasian. Therefore, plaintiffs have established that they are members of the appropriate protected group under each of their federal discrimination claims.

Defendant asserts that plaintiffs have failed to make the required showing that they were qualified for the position of sergeant because they lacked the main criterion set by Chief Glasgow--adequate job performance. However, the evidence reflects that both officers attended and completed training at the police academy located at the University of Alabama in Tuscaloosa. Both had

10

received continuing law enforcement-related training subsequent to their respective graduations, and Glass also had taken college level courses and been trained in bio-terrorism awareness, identification, and incident command.

At the time the positions were created, Johnson had 23 years' experience as a police officer and Glass had 13 years' experience. Johnson previously had held the position of sergeant with the City of Calera Police Department from 1984 to 1992. Given these facts, the court concludes that both plaintiffs have established that they are at least minimally qualified for the position of sergeant.[3] *See Stanfields v. Answering Service, Inc.*, 867 F.2d 1290, 1294 (11th Cir. 1989).

Defendant also asserts that plaintiffs have failed to establish a *prima facie* case of discrimination because they never sought the position of sergeant in 1997 and, therefore, cannot establish that they were the subjects of adverse employment decisions. In their respective EEOC charges of discrimination, filed on November 5, 1997, Johnson and Glass each stated that they would have applied for the sergeant positions had they known about them. [Plaintiffs' Exh. A, Johnson EEOC Charge of Discrimination; Plaintiffs' Exh. B, Glass EEOC Charge of Discrimination].

---

[3] Defendant asserts that plaintiffs were not qualified for the position of sergeant because of their poor job performances. However, plaintiffs contend that they were adequately qualified and have presented evidence to support this claim. In determining the existence of a *prima facie* case, the evidence is construed in the light most favorable to the non-moving party. Thus, this factor is more appropriately considered with regard to whether defendant has established legitimate, non-discriminatory reasons for failing to hire plaintiffs in rebuttal to plaintiffs' alleged *prima facie* case.

11

In his deposition, taken in October 2002, Johnson testified as follows:

> Q.  Did you want to seek the sergeant's position when you found out – the third sergeant's position when you received a memo?
>
> A.  No.  I didn't want it.  No.

[Johnson Depo. at 121].

> Q.  Did you ever go and ask to be considered for the third position?
>
> A.  No.

[*Id.* at 122].

> Q.  You testified earlier today that you didn't seek the sergeant's position when the three positions were filled a few years ago; is that right?
>
> A.  Yes, sir.
>
> Q.  And that you, after learning of two of the positions being filled and one being open, you didn't seek that third one?
>
> A.  No, sir.
>
> Q.  And you didn't plan on seeking any of those?
>
> A.  No, sir.
>
> Q.  Is that correct?
>
> A.  Yes, sir.
>
> Q.  I believe your testimony was that had you known about them ahead of time you still would not have sought them?
>
> A.  No, sir.

12

Q. That's correct?

A. Yes, sir.

[*Id*. at 152-53].

At his deposition, taken in October 2002, Glass testified as follows:

Q. Well, you have testified repeatedly you had no interest in seeking the sergeant's position?

A. Correct.

[Glass Depo. at 358].

Q. But, again, you had no interest in seeking the job has been your testimony?

A. I didn't say that I wouldn't take it if I were offered the opportunity. I just said that I felt like I had earned the privilege and the right to have the equal opportunity of obtaining that position. Then it would have been my choice to either turn it down or their choice to turn me down, regardless of how I had posed on some kind of equal opportunity to obtain that position.

Q. Did you seek the job?

A. No, sir.

[*Id*. at 360].

Subsequent to his deposition testimony, Johnson submitted an affidavit

which states, in pertinent part:

\* \* \*

2. I would have applied for the sergeant positions with the Calera police department in 1997 had I known there were openings for such positions. The positions were never posted at the police department. Chief

13

Glasgow did not accept resumes or applications for the positions.

3. I have always said that I would have applied for the sergeant's position, since the filing of my EEOC Charge of Discrimination or before. My not being promoted to the sergeant position is the reason I filed the Charge of Discrimination with the EEOC and further is the main basis of my lawsuit against the City of Calera.

4. If I have said anything that can be characterized as an indication that I would not have accepted or applied for the sergeants positions, that characterization is untrue.  I wanted to be given equal opportunity to apply for the position and the right to either accept or deny the position based upon the terms of the offer.

[Johnson Affidavit dated April 26, 2002].

Glass also subsequently submitted an affidavit which stated in pertinent

part:

* * *

2. I would have applied for the sergeant positions with the Calera police department in 1997 had I known there were openings for such positions.  The positions were never posted at the police department.  Chief Glasgow did not accept resumes or applications for the positions.

3. I have always said that I would have applied for the sergeant's position, since the filing of my EEOC Charge of Discrimination or before. My not being promoted to the sergeant position is the reason I filed the Charge of Discrimination with the EEOC and further is the main basis of my lawsuit against the City of Calera.

4. If I have said anything that can be characterized as an indication that I would not have accepted or applied for the sergeants positions, that characterization is untrue. Admittedly, I do not think applying would have

14

> done any good for me.   I believe the chief had
> something against older officers.  But, I wanted to be
> given the equal opportunity to apply for the position
> and the right to either accept or deny the position
> based upon the terms of the offer.

[Glass Affidavit dated April 26, 2002].

The law in this circuit is that a party cannot give "clear answers to

unambiguous . . . questions" in a deposition and thereafter raise an issue of

material fact by giving contradictory sworn testimony that fails to explain the

contradiction. *Van T. Jenkins ans Associates v. U.S. Industries, Inc.*, 736 F.2d

656, 657 (11th Cir. 1984).   When this occurs, the court may disregard the

contradictory testimony as a sham.  *Id.* at 658-59.   This rule is applied

sparingly because of the harsh effect this rule may have on a party's case and

because that

> to allow every failure of memory or variation in a
> witness's testimony to be disregarded as a sham would
> require far too much from lay witnesses and would
> deprive the trier of fact of the traditional opportunity to
> determine which point in time and with which words
> the . . . affiant . . . was stating the truth.

*Tippers v. Celotex Corp.,* 805 F.2d 949, 953-54 (11th Cir. 1986).  Thus, the

Eleventh Circuit requires a court to find some inherent inconsistency between

the contradictory testimonies. *See id.* at 954.

In his deposition testimony cited above, Johnson unequivocally states that

he did not seek the third sergeant's position when he learned that the other two

had been filled and that he "didn't want" the position.  He further states that

15

had he known about the openings ahead of time, he still would not have sought

them. This testimony is inherently contradictory to Johnson's statements in his

affidavit. Therefore, the affidavit statements must be disregarded as a sham.

As a result, Johnson has failed to make out a *prima facie* case of violation of the

ADEA and 42 U.S.C. § 1983 because he cannot show that he applied for the

sergeant's position or would have done so had he been offered the opportunity.

The testimony of Glass, however, is more equivocal. His testimony, when

read in context, may be taken one of two ways. While Glass states that he was

not interested in seeking the sergeant's position, when questioned further he

asserts that he "didn't say that [he] wouldn't take it if [he] were offered the

opportunity." Thus, it is unclear what Glass means when he says he was not

interested in the position and then states he feels he should have had the

opportunity to apply but did not. This is a situation in which a trier of fact must

determine "which point in time and with which words the . . . affiant . . . was

stating the truth." *Tippers*, 805 F.2d at 953-54. Therefore, Glass has

established a *prima facie* violation of the ADEA by the City of Calera.

To the extent that a *prima facie* violation of the ADEA has been

established, defendant asserts that it had a legitimate, non-discriminatory

reason for not promoting either plaintiff. Glasgow testified that he made his

selections in 1997 based on his perception of the officers' job performance.

[Glasgow Depo. at 55]. According to defendant, both officers Johnson and

16

Glass had poor reporting and patrolling skills. Glasgow considered the reports written by the officers selected for the sergeants' positions (Palmer, Rollan, and Holcomb) to be "more efficient." Glasgow states that the reports made by Johnson and Glass were poorly written. He asserts that Lt. (later Chief) Finn talked to plaintiffs about their written reports but does not recall any documentation of this. [See id. at 61-64]. He also deemed them to be more diligent in performing their patrol duties than Johnson or Glass.

However, even assuming both Johnson and Glass have established a prima facie case, they cannot rebut defendant's legitimate, non-discriminatory reasons given for selecting others for the position. Records submitted by defendant reflect that Johnson received "officer report correction request" forms on ten different occasions. [Defendant. Exh. 6]. These reports are sent to officers alleging deficiencies in written reports that had been submitted by the officers. Sometimes, Johnson received these reports for failing to sign documents such as incident reports; on occasion he neglected to put down necessary information such as a vehicle's description or tag number or the value of an item or caliber of a firearm. There were also various other instances of failing to properly submit information. [See id.].

With regard to performance in patrolling duties, Glasgow explained that he considered the fact that one patrol officer would sometimes only put 40 miles on his vehicle during a shift with no wreck reports and no other incidents

17

that tied him up during his shift, whereas another officer would have over 100 miles on his vehicle during an eight-hour shift. The greater mileage on the vehicle indicated to Glasgow that the officer was doing his job, such as checking out businesses for signs of burglary. [Glasgow Depo. at 61-62]. He specifically identified Johnson and Glass as officers with low mileage and a low number of incident reports. [*Id*. at 63].

Jim Finn supervised Johnson and Glass after he became a lieutenant with the Calera Police Department. [Glass Depo. at 302]. Finn testified that he felt Johnson's report writing was inferior in that the reports "tended not to be easy to read." [Finn Depo. at 70]. Johnson also frequently left significant details out of his reports. [*Id*. at 72-73]. These issues were addressed with Johnson. [*Id*. at 75-76]. In contrast, Finn considered the reports of all of those selected for the sergeant positions to have been "pretty thorough." [*Id*. at 76-77].

Finn testified that he was told by Glasgow that the other officers did not trust Johnson as a supervisor; however, Glasgow did not give him any examples to illustrate this claim. [*Id*. at 54]. He also testified that he knew other officers made jokes about Johnson and it was his "impression" that Johnson knew about this and never addressed it. [*Id*. at 63-64].

Finn also was concerned about Johnson's "officer safety" in that there were a number of times when he would expose his gun to people that were under arrest or leave it unattended in a drawer in the office. [*Id*. at 65-66].

18

He states that he reported this behavior to Chief Glasgow but did not address the issue with Johnson directly. [*Id.* at 68]. Glasgow also testified that he had received complaints regarding Johnson's lack of productivity (reporting arrests, mileage covered on patrol, and tickets issued) and "officer safety issues" related to both Johnson and Glass. [Glasgow Depo. at 89-90].

In his deposition testimony, Johnson states that he attributes the promotion of the other officers to Glasgow's desire to have "some of his buddies . . . where they could do like they wanted to" and that the new sergeants would "pat him on the back and kiss his ass like forty going crazy." [Johnson Depo. at 115-16]. Although Johnson also stated that he believes that Glasgow does not like black people, when pressed for a reason as to why he believes this, he stated only that "[Glasgow] didn't go to school when it was integrated." [*Id.* at 126]. However, when asked if he had any evidence that any actions Glasgow took were based on race, he responded, "No, none that I know of." [*Id.*]

According to Finn, Glass "usually did pretty good reports, but there were times . . . when they didn't make any sense at all." [Finn Depo. at 76]. He stated that he had no complaint about Glass's ability to do his job, just his inconsistency. [*Id.* at 77]. Finn also testified that there was an occasion when Glass failed to answer a call to back up another officer and, on this occasion, was at a restaurant drinking coffee. [*Id.* at 104]. Finn asserted also there were other occasions when Glass would not answer calls, then later claim that his

19

radio did not work, his car radio did not work, or his beeper did not go off. [*Id.* at 106]. Finn claims that there were occasions when Glass would fail to show up at work, would arrive late, or would rely on other officers to come to his house to get him in order to get to work. [*Id.* at 106, 113]. Though he disputes their validity, Glass admits in his deposition testimony that he received several reprimands for his conduct while Chief Harris was the Calera police chief, as well as under Chiefs Glasgow and Finn. [Glass Depo. at 189-90, 230-34, 408, 423-24, 429-30, 434-36].

To satisfy the burden of production of a legitimate, non-discriminatory reason for a personnel action offered to rebut a *prima facie* showing of discrimination involving circumstantial evidence, "the defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Barton*, 450 U.S. at 254-55, 101 S.Ct. at 1094 (citation and footnote omitted); *Combs*, 106 F.3d at 1529. "To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Barton*, 450 U.S. at 257, 101 S.Ct. at 1096. Applying this standard, the court finds that defendant has established a legitimate, non-discriminatory reason for not promoting either Johnson or Glass.

20

Plaintiffs assert that the evidence reflects that the proffered reason was not the true reason for the employment decision, that a discriminatory reason more likely motivated the employer, and that the employer's proffered explanation is unworthy of credence. See Barton, 450 U.S. at 256, 101 S.Ct. at 1095.

Plaintiff Johnson states that the defendant has asserted without evidence that he did not receive the sergeant position because he had performed poorly when he previously had been a sergeant. He notes that, at the time his sergeant's position was eliminated in 1992, there had been no complaints regarding his performance in his personnel file, and Glasgow had not informed the mayor that he wanted to eliminate this position because of Johnson's poor performance.

However, the testimony submitted reflects that Johnson's abilities or performance in 1992 were not the controlling reasons that Glasgow failed to promote him back to sergeant in 1997. It was a combination of his recollection of Johnson's past performance and Johnson's performance immediately prior to the re-creation of the sergeant positions. Regardless of the reason for Johnson's demotion in 1992, Glasgow testified that he made his selections in 1997 based on his perception of each officer's job performance at that time [Glasgow Depo. at 55], and, as noted above, he cited specific instances of problems with both Johnson and Glass regarding their performances on patrol.

21

He also pointed out specific problems with Johnson and, to a lesser extent, Glass, with regard to report writing.

Johnson asserts that defendant's "inconsistent" statements regarding the reason that Johnson did not receive the promotion establish pretext. Even assuming this to be true, it would only establish pretext as to Johnson, not Glass. In any event, the reasons stated are not necessarily inconsistent. It is entirely possible that Glasgow considered Johnson's skills to be lacking in 1992 while also recognizing that the department did not need any sergeants. It would have been reasonable for Glasgow to conclude that, because the department continued to operate effectively despite what he perceived to be the poor performance of Martin (the other sergeant whose position was eliminated) and Johnson, the department no longer needed sergeants. Thus, his failure to advise the mayor that Johnson's performance was sub-par was unnecessary with regard to his goal of obtaining the mayor's permission to eliminate the positions.

Plaintiffs also assert that Chief Finn's admission that all the officers have had deficient reports at one time or another reflects that the claim that selections were based, in part, on report-writing skills is unworthy of credence. However, the evidence reflects that Johnson's report-writing skills were not simply deficient; they were consistently deficient. Likewise, while Glass generally wrote good reports, sometimes they were unintelligible. In contrast,

22

*Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (quoting *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988) (citations omitted)).

Plaintiffs also assert that Glasgow's evaluations of the job performances of Johnson and Glass as legitimate, non-discriminatory reasons for not promoting plaintiffs should be ignored because they are "subjective" evaluations. However, subjective criteria are suspect only when they are purely subjective, conclusory impressions of a litigant that are devoid of any objective facts which, if false, can be contradicted by testimony or other evidence. Where a decision-maker's subjective reason is supported by a "clear and reasonably specific" explanation, as required by *Barton, supra*, there will be objective factors that can be tested against other testimony and evidence. *Chapman v. AI Transport*, 229 F.3d 1012, 1034 n.25 (11th Cir. 2000) (*en banc*). According to the Eleventh Circuit,

> [a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion. Continuing our example of a sales clerk or wait staff position, it might not be sufficient for a defendant employer to say it did not hire the plaintiff applicant simply because "I did not like his appearance" with no further explanation. However, if the defendant employer said, "I did not like his appearance because his hair was uncombed and he had dandruff all over his shoulders," or "because he had his nose pierced," or "because his fingernails were dirty," or "because he came to the interview wearing short pants and a T-shirt," the defendant would have

24

Glasgow was "satisfied" or considered the reports of the officers selected to be "pretty thorough."

Plaintiffs also assert that "many" of the reprimands received by Glass occurred after the 1997 promotions and, thus, could not have been considered by the employer at the time the decision was made. However, the record evidence reflects that Glass also received reprimands and correction notices before the selections were made. Thus, consideration of this factor was appropriate.

The law in the Eleventh Circuit is well-established that a plaintiff's opinion that he or she is as qualified as others is irrelevant. It is the employer's beliefs that are important, not the employee's. *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997). A plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, provided that the proffered reason is one that might motivate a reasonable employer. *Combs*, 106 F.3d at 1541-43. Federal courts

> do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior.

23

> articulated a "clear and reasonably specific" basis for
> its subjective opinion -- the applicant's bad (in the
> employer's view) appearance. That subjective reason
> would therefore be a legally sufficient, legitimate,
> nondiscriminatory reason for not hiring the plaintiff
> applicant. The burden would then shift back to the
> plaintiff to offer sufficient evidence for a reasonable
> fact-finder to find that the defendant's reason was
> pretext for discrimination.

*Id.* at 1034.

Thus, even assuming either or both of the plaintiffs have established a

*prima facie* case of age and/or racial discrimination, they have failed to rebut

defendant's legitimate, non-discriminatory reason for not selecting them for a

sergeant position. Therefore, summary judgment is due to be granted to

defendant on these claims.[4]

---

[4] There is a split among the district courts in this circuit whether a claim pursuant to the ADEA precludes a § 1983 action based on the same facts. *See Ford v. City of Oakwood*, 905 F.Supp. 1063 (N.D.Ga. 1995) (§ 1983 claim precluded); *Hornfeld v. City of North Miami Beach*, 29 F.Supp.2d 1357 (S.D.Fla. 1998) (§ 1983 claim not precluded); *Bleakley v. Jekyll Island-State Park Authority*, 536 F.Supp. 236 (S.D.Ga. 1982) (§ 1983 claim not precluded).

With respect to the preemptive effect of a Title VII claim on a § 1983 claim, the Eleventh Circuit has not specifically ruled whether Title VII preempts an employment discrimination claim pursuant to § 1983, and there is a split of authority among the circuits. However, decisions of the Eleventh Circuit suggest that the claims may be brought together. *See Stallworth v. Choler*, *supra*; *Hill v. Metropolitan Atlanta Rapid Transit Authority*, 841 F.2d 1533 (11th Cir. 1988). *See also Richardson v. Lamar County Board of Education*, 729 F.Supp. 806 (M.D.Ala. 1989); *Suber v. Bulloch County Board of Education*, 722 F.Supp. 726 (S.D.Ga. 1989). *But see Montgomery v. City of Birmingham*, 2000 WL 1608620 (N.D.Ala. Jan. 20, 2000), *aff'd by unpublished opinion*, 237 F.3d 636 (11th Cir. 2000) (Title VII is the exclusive cause of action). Because the analytical framework is the same, and because plaintiffs have not established that they are entitled to relief under any of the statutes, this court need not decide whether Title VII and ADEA claims preclude a claim under § 1983 based on the same allegations.

25

II.    Retaliation Claim

To establish a *prima facie* case of retaliation under 42 U. S. C. § 2000e-3(a), a plaintiff must show that (1) he engaged in statutorily-protected expression; (2) he suffered adverse employment action; and (3) the adverse action was causally related to the protected expression. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998).

Glass's complaint to the EEOC is unquestionably statutorily protected expression. Thus, this element is satisfied. However, Glass's EEOC complaint was filed on November 5, 1997, and the only "adverse" job actions cited by Glass are (1) being reprimanded for wrecking a patrol car, (2) being reprimanded because a dispatcher on his shift left the segregation door open between male and female cells, (3) his one-week suspension in April 1999 for taking allegedly unauthorized sick leave, (4) a two-week suspension beginning September 6, 2000, for allegedly disobeying a direct order and neglect of duty, and (5) what he refers to as his "constructive" termination on September 19, 2000.

Not all conduct by an employer negatively affecting an employee constitutes adverse employment action. *See Wideman*, 141 F.3d at 1456. A tangible employment action consists of a *significant* change in employment status, such as hiring, firing, failing to promote, reassignment with *significantly* different responsibilities, or a decision causing a *significant* change in benefits.

26

*Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 760-61,118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998).

The evidence reflects that the reprimand involving the wreck of Glass's patrol car occurred under the tenure of Chief Harris who retired five years before plaintiff filed his EEOC charge. [*See* Glass Depo. at 189]. This leaves only one reprimand which, standing alone, is insufficient to establish an adverse employment action. *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1245 (11th Cir. 2001).

A termination is undoubtably a significant adverse employment action. However, in this case, Glass was not terminated; he resigned. For this resignation to constitute an adverse employment action, it must be a constructive discharge. In order to establish such a claim, Glass must demonstrate that his working conditions were so intolerable that a reasonable person in his position would be forced to resign. *Griffin v. GTE Florida, Inc.*, 182 F.3d 1279, 1283 (11th Cir. 1999). The circumstances alleged by Glass simply do not meet this standard.

However, the facts underlying a plaintiff's ultimate resignation, while not amounting to a constructive discharge, may, nevertheless, be sufficient to establish the existence of an adverse employment action. In *Wideman, supra*, the Eleventh Circuit affirmed the dismissal of a constructive discharge claim though the plaintiff was subjected to assorted indignities, including being listed

27

as a no-show on a scheduled day off, being required to work on one occasion without a lunch break, receiving two written reprimands and a suspension during a single month, having a supervisor solicit negative comments about her from employees who otherwise would have had positive comments, not being scheduled to work on a day she was supposed to be scheduled and, when she complained about it, having an assistant manager threaten to shoot her in the head, and receiving intentionally delayed medical attention when she suffered an allergic reaction at work. Nevertheless, the Eleventh Circuit held these incidents sufficient, taken collectively, to suffice as an adverse employment action as that term is applied to retaliation claims. *Wideman*, 141 F.3d at 1455-57. Indeed, the court concludes that the suspensions of Glass, standing alone, amount to adverse employment actions. *See Davis*, 245 F.3d at 1245.

The finding that Glass's suspensions were adverse employment actions presents the question of whether there is enough evidence to create a genuine issue of material fact as to the causal connection between his participation in a protected activity and the adverse employment actions. "To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *Gupta v. Florida Board of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) (citation and internal marks omitted); *see also Raney v. Vinson Guard Service, Inc.,* 120 F.3d 1192, 1197 (11th Cir. 1997) ("a plaintiff

must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action"). It is not enough for the plaintiff to show that someone in the organization knew of the protected expression; instead, the plaintiff must show that the person taking the adverse action was aware of the protected expression. See Raney, 120 F.3d at 1196.

The evidence establishes that the decision-makers at the Calera Police Department were all aware of Glass's EEOC complaint. However, this in and of itself does not, under the circumstances presented here, establish a causal connection.

Close temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated. See Gupta, 212 F.3d at 590. However, in this case, we have just the opposite situation. Glass filed his EEOC charge in November 1997 and was not the subject of any adverse employment action until April 1999. This arguably defeats causation. Nonetheless, the Eleventh Circuit has stated that gaps of time, standing alone, do not preclude a plaintiff from producing enough evidence for a reasonable jury to conclude that protected speech was a substantial factor in the decision to terminate him. Stanley v. City of Dalton, Georgia, 219 F.3d 1280, 1291 (11th Cir. 2000) (four-year lapse); Schneider v. Indian River Comm. College Foundation, Inc., 875 F.2d 1537, 1543 n.9 (11th

29

Cir. 1989) (ten-month lapse).  Thus, Glass is not precluded from producing other evidence to establish causation.  Glass concedes he violated certain police departmental rules regarding taking leave or allowing other officers to do his work without supervisory approval.  He simply believes these rules were enforced against him and not others.  However, the only other evidence offered by Glass is his claim that other officers told him that "They (the City of Calera) want you out of there or it looks like they're trying their best to get rid of you or something to that effect."  [Glass Depo. at 435].  Glass does not assert that any of these officers told him that they were told by Chief Glasgow or Chief Finn or anyone in a position of authority with the City of Calera that they were trying to get rid of him.  Glass has submitted no affidavits or deposition testimony from any of the officers who are alleged to have made these statements to him.  Consequently, there is no evidence that these statements are anything other than the opinions of the officers themselves.  Such evidence is insufficient to establish a link between Glass's filing of his EEOC complaint and the adverse employment actions.  Therefore, defendant's motion for summary judgment as to this claim is due to be granted.

A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this ⎽⎽⎽⎽ day of September, 2002.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE

31